UNITED STATES DISCTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCIENTIFIC COMPUTING ASSOCIATES, INC., and REVOLUTION COMPUTING, INC.<br><br>Plaintiffs,<br><br>- vs -<br><br>GREGORY R. WARNES, RANDOM TECHNOLOGIES, LLC and THE UNIVERSITY OF ROCHESTER MEDICAL CENTER,<br><br>Defendants. | **Defendant, University of Rochester Medical Center's Answers to Plaintiffs' First Set of Interrogatories and Response to Requests For Production**<br><br>**07-CV-6351T(P)** |

Defendant, University of Rochester Medical Center ("URMC"), for its answers to plaintiffs' first set of interrogatories and response to requests for production states as follows:

## GENERAL OBJECTIONS

1.      The responses set forth below are based upon information currently known to URMC and it submits these responses without waiving or intending to waive the right to object on any of the following bases:  competence, relevance, materiality, privilege and/or admissibility.  URMC further expressly reserves the right to object to the use of these responses as evidence for any purpose, including but not limited to the use of these responses in any subsequent proceeding or in the trial of this or any other action.  URMC also reserves the right to object on any ground to other interrogatories or other disclosure requests concerning the subject matter of these Interrogatories.  In addition, URMC incorporates each and every one of its General Objections into each of its Specific Objections and Responses set forth below.

2.     URMC objects generally to the Interrogatories to the extent that they are overly broad, vague, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

3.     URMC objects to the Interrogatories to the extent they fail to define a relevant time period and are therefore overly broad and unduly burdensome.

4.     URMC objects to the Interrogatories to the extent that they purport to require URMC to produce information which is in the public domain or available from other sources or third parties, because such information is equally available to plaintiff.

5.     URMC objects to the Interrogatories to the extent that they purport to inquire about issues or seek information not within URMC's possession, custody or control.

6.     URMC objects to the Interrogatories to the extent that they purport to require production of information that is privileged and/or protected from disclosure as material prepared for or in anticipation of litigation; attorney work product; attorney-client communications; are not discoverable under Federal Rule of Evidence 408 as confidential settlement communications; are shielded from discovery as material governed by the common interest privilege or are otherwise privileged.  Moreover, the inadvertent production of any privileged or work product information or any other protected or privileged information shall not be deemed a waiver of any claim of protection or privilege URMC has or may have as to such information, and URMC reserves the right to demand the return of all information inadvertently produced.

7.     URMC objects to the Interrogatories to the extent that they purport to require production of confidential, proprietary, trade secret or otherwise sensitive information belonging to URMC or other entities not parties to this action.

8.    URMC objects to the Interrogatories to the extent that they exceed the scope of or request information beyond that which is required to be disclosed pursuant to the Federal Rules of Civil Procedure and/or the Local Rules of Civil Procedure for the Western District of New York.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

Identify all individuals who are presently, or who were in the past five years, employed by or affiliated with URMC and who worked with Warnes and/or Random Technologies in any fashion or worked at or for the URMC Department of Biostatistics and Computational Biology. For each such individual, please also provide the dates of their employment or affiliation and job title.

### Response No. 1

URMC objects to this interrogatory because it is overly broad and not reasonably related to the claims asserted in plaintiffs' amended complaint. All work that Professor Warnes performed in developing the RPro™ Statistical Software system was done on behalf of Random Technologies, LLC, an entity with whom URMC has no legal or financial relationship. The work that Professor Warnes performed in developing the RPro™ Statistical Software system was not performed as part of his job responsibilities as an associate professor of biostatistics and computational biology at the URMC. Indeed, URMC was not formally notified of Professor Warnes's work on the RPro™ statistical software system until on or about the time that he provided URMC with an Invention Disclosure Form on May 3, 2007.

Following, Professor Warnes's disclosure, several URMC employees interacted with Professor Warnes regarding his plan for launching his start up company, Random Technologies. The names of those employees are contained within the e-mails that are being produced in connection with these interrogatory responses and include the following individuals:

> Johnny Fahner-Vihtelic
> Deputy Director & Associate Director
>     For Physical Sciences
> Office of Technology Transfer
> University of Rochester Medical Center
>
> Mark Michaud
> Public Relations and Communications Department
> University of Rochester Medical Center
>
> Kathleen M. Mannix
> Graphics Designer
> Public Relations & Communications
> University of Rochester Medical Center

**Interrogatory No. 2**

State the date(s) on which Warnes became employed, including, but not limited to, any employment as a consultant or independent contractor, at URMC, as well as any and all titles held, job responsibilities and/or duties for each time period.

**Response No. 2**

Professor Warnes was hired by URMC as an Interim Associate Professor of Biostatistics and Computational Biology on May 22, 2006. Effective, October 1, 2006, Professor Warnes's title changed to Associate Professor of Biostatistics and Computational Biology. In addition to this title, Professor Warnes now holds the title of Director, Center for Research Computing. At URMC, Professor Warnes has worked in the Division of

Biomedical Modeling/Informatics and has directed the University of Rochester's Center for Biodefense Immune Modeling.

**Interrogatory No. 3**

Identify all statistical software that you purchased for Warnes and/or Random Technologies at any time. For each such purchase, identify the product purchased, the individual who approved the purchase, the date of the purchase, the price of the product purchased, and the purpose of the purchase.

**Response No. 3**

URMC objects to this interrogatory because it is overly broad and not reasonably related to the claims asserted in plaintiffs' amended complaint. Plaintiffs have asserted that defendants violated certain trademarks held by plaintiffs in using the term "RPro" in reference to statistical software developed and marketed by Professor Warnes and/or Random Technologies. Whether use of that phrase constituted a violation of 15 U.S.C. §1125(a) or in any other way interfered with plaintiffs' alleged rights with respect to RPro™ and/or NetWorkSpaces™ for RPro™ has no relevance to the type of statistical software that Professor Warnes may have used during his employment with URMC. Without waiving these objections, URMC states that it has made a diligent search of all available records and has not located any information to indicate that it purchased statistical software for Professor Warnes that was distributed by Random Technologies or which carried the RPro™ trademark and/or NetWorkSpaces™ for RPro™ name.

**Interrogatory No. 4**

State whether URMC has financed, or provided reimbursement for, any trips by Warnes to trade shows or conferences at which Warnes displayed or promoted any statistical analysis software products, including but not limited to, R. Statistical Software Products. For each such trip, provide the date(s) of the trip, the name and location of the trade show, and the amount of expense reimbursed.

**Response No. 4**

URMC objects to this interrogatory because it is overly broad and not reasonably related to the issues raised in plaintiffs' complaint. Without waiving this objection, URMC states that it has provided reimbursement to Professor Warnes for his attendance at seminars/conferences at which he made presentations or sought additional information regarding biostatistics and computational biology. Such reimbursements were intended only to cover expenses that Professor Warnes incurred while attending seminars/conferences that were directly related to his job functions at URMC and not for expenses he incurred promoting his start-up company, Random Technologies, or any of its software products.

**Interrogatory No. 5**

Provide an accounting of any money or any items of value that you have received that was in any way connected with any statistical analysis software products, including but not limited to R Statistical Software Products, that Warnes or Random Technologies were involved with in any way.

**Response No. 5**

URMC objects to this interrogatory because it is overly broad and not reasonably related to the issues raised in plaintiffs' complaint. Without waiving this objection, URMC states that it did not receive money or any items of value through the sale of any software products developed or produced by Professor Warnes and/or Random Technologies.

**Interrogatory No. 6**

Describe your involvement in any software development, advertising, marketing, publicity or sales involving Warnes and/or Random Technologies at any time.

**Response No. 6**

URMC objects to this interrogatory because it is overly broad and not reasonably related to the claims asserted in plaintiffs' amended complaint. Without waiving this objection, URMC states that it did not participate in developing the RPro Statistical Software program that Professor Warnes disclosed to URMC on May 3, 2007. Following that disclosure, URMC employees did provide assistance to Professor Warnes with respect to his plan for launching his start up company, Random Technologies. This assistance included revisions to a press release that was issued on or about June 22, 2007 and some graphic design work performed by Kathleen Mannix. URMC also introduced Professor Warnes to representatives of High Tech Rochester Inc. (HTR), a not-for-profit economic development organization that assists new and emerging technology businesses based in Rochester, New York. Further information responsive to this interrogatory can be found in the documents that are being produced in connection with these interrogatory responses.

**Interrogatory No. 7**

State whether Warnes and/or Random Technologies, or anyone on their behalf, has ever used any facilities at or owned by URMC, including, but not limited to, any buildings, software and/or servers, in connection with advertising, marketing, selling or offering for sale, developing and/or improving any statistical software products, including, but not limited to, any R Statistical Analysis Software Products, and, if so, identify the specific products involved, the specific facilities used and the dates of each such use.

**Response No. 7**

URMC objects to this interrogatory because it is overly broad and not reasonably related to the claims asserted in plaintiffs' amended complaint. Plaintiffs have asserted that defendants violated certain trademarks held by plaintiffs in using the term "RPro" in reference to statistical software developed and marketed by Professor Warnes and/or Random Technologies. Whether use of that phrase constituted a violation of 15 U.S.C. §1125(a) or in any other way interfered with plaintiffs' alleged rights with respect to RPro™ and/or NetWorkSpaces™ for RPro™ has no relevance to software development work performed by Professor Warnes while employed by URMC. URMC states that its facilities were used for discussions between Warnes and other URMC employees in the May-July 2007 time frame regarding his efforts to launch his start up company, Random Technologies. These discussions occurred via e-mail, telephone and during interoffice conferences. Further information responsive to this interrogatory can be found in the documents that are being produced in connection with these interrogatory responses.

**Interrogatory No. 8**

Identify the author of, the source of information for, and any person who had any role whatsoever concerning the June 22, 2007 press release entitle "New URMC Start-UP Introduces Statistical Analysis Software," or any other press release concerning Warnes or Random Technologies.

**Response No. 8**

The information contained within the June 22, 2007 press release was provided to URMC by Professor Warnes and Random Technologies, LLC. Mark Michaud and Johnny Fahner-Vihtelic assisted Professor Warnes in drafting and arranging for dissemination of the press release. Further information responsive to this interrogatory can be found in the documents that are being produced in connection with these interrogatory responses.

**Interrogatory No. 9**

Identify the basis for the following statement in the June 22, 2007 press release entitled "New URMC Start-Up Introduces Statistical Analysis Software": "During his tenure at URMC, Warnes developed much of the material that forms the basis for Random Technologies' RPro software."

**Response No. 9**

URMC objects to this interrogatory. The work that Professor Warnes performed in developing the statistical software system that he disclosed to URMC is not relevant to the issue of whether use of the phrase "RPro" violated any trademarks held by plaintiffs. As a result, discovery regarding when and how Professor Warnes may have developed the software program is not relevant in this case. Without waiving this objection, URMC states that all information used for the June 22, 2007 press release was provided to URMC by Professor Warnes and Random Technologies, LLC.

**Interrogatory No. 10**

Identify any media inquiries received concerning the June 22, 2007 press release entitled "New URMC Start-Up Introduces Statistical Analysis Software."

**Response No. 10**

Mark Michaud received several media inquiries in response to the June 22, 2007 press release. The specific details regarding these inquiries can be found in the e-mails that are being produced in connection with these interrogatories.

**Interrogatory No. 11**

Identify all communications, whether oral or written (including electronic), that URMC, or anyone acting on its behalf, including, but not limited to, attorneys, has had with Warnes and/or Random Technologies or any individual acting on either of their behalf, including, but not limited to, attorneys, concerning:

a.    Random Technologies;

b.    Any R Statistical Software Products that Warnes and/or Random Technologies were involved with in any way;

c.    Any press releases or draft press releases regarding any R Statistical Analysis Software Products;

d.    Plaintiffs, Plaintiffs' claims or Plaintiffs' R Statistical Analysis Software Products;

e.    The letter to Warnes on which you were copied, dated June 27, 2007 from Robert Dunne, or the letter to Warnes on which you were copied, dated July 18, 2007 from William J. Speranza;

f.    Any investigation or discipline of Warnes by URMC; and

g.    The Lawsuit or any claims in any way related to the Lawsuit.

**Response No. 11**

    a-g. URMC objects to this interrogatory because it is overly broad and not reasonably related to the issues raised in plaintiffs' amended complaint. URMC further objects to the extent that the interrogatory seeks information that is protected by attorney-client privilege. Without waiving these objections, URMC refers plaintiffs to the documents that are being produced in connection with these interrogatory responses.

**Interrogatory No. 12**

    Describe any investigation or discipline by you of Warnes concerning any statistical analysis software products, including, but not limited to any R Statistical Analysis Software Products, and state the dates and results of any such investigation or discipline.

**Response No. 12**

    URMC objects to this interrogatory because it is vague and ambiguous. Without waiving this objection, URMC states that following Professor Warnes's invention disclosure on May 3, 2007, URMC reviewed the disclosure to determine whether it would claim an ownership interest in the statistical software program disclosed by Professor Warnes. In early August 2007, URMC communicated to Professor Warnes that URMC would not be taking title, or claiming an ownership interest in, the RPro statistical software program that Professor Warnes had disclosed to URMC.

**Interrogatory No. 13**

Identify all records of investigation or discipline by you of Warnes concerning any statistical analysis software products, including, but not limited to R Statistical Analysis Software Products, and/or claims made in the Lawsuit or claims threatened against Warnes or Random Technologies by URMC.

**Response No. 13**

URMC objects to this interrogatory as being vague, ambiguous and duplicative of prior interrogatories. URMC further objects to the interrogatory to the extent it seeks the production of materials that are attorney-client privileged and/or protected as attorney work-product materials. Without waiving these objections, URMC states that it did not discipline Professor Warnes at any time for the performance of his duties at URMC.

## REQUESTS FOR PRODUCTION

**Request No. 1**

Copies of all documents constituting, reflecting or concerning all statistical software products, including but not limited to R Statistical Analysis Software Products, that you purchased for Warnes and/or Random Technologies at any time.

**Response No. 1**

URMC objects to this document request because it is overly broad and not reasonably related to the claims asserted in plaintiffs' amended complaint. Plaintiffs have asserted that defendants violated certain trademarks held by plaintiffs in using the term "RPro" in reference to statistical software developed and marketed by Professor Warnes and/or Random Technologies. Whether use of that phrase constituted a violation of 15 U.S.C. §1125(a) or in any other way interfered with plaintiffs' alleged rights with respect to RPro™

and/or NetWorkSpaces™ for RPro™ has no relevance to the type of statistical software that

URMC may have purchased for Professor Warnes to use in connection with his job duties.

### Request No. 2

Copies of all documents constituting, reflecting or concerning any money or any items of value that you have ever received that was in any way connected with any statistical analysis software products, including but not limited to R Statistical Software Products, that Warnes or Random Technologies were involved with in any way.

### Response No. 2

URMC objects to this request because it is overly broad and not reasonably related to

the issues raised in plaintiffs' complaint. Without waiving these objections, URMC states it

has no documents responsive to this request.

### Request No. 3

Copies of all documents constituting, reflecting or concerning URMC's financing of, or reimbursement for, any trips by Warnes to trade shows or conferences at which Warnes displayed or promoted any statistical analysis software products, including but not limited to, R. Statistical Software Products.

### Response No. 3

URMC objects to this request because it is overly broad and not reasonably related to

the issues raised in plaintiffs' complaint. Without waiving these objections, URMC refers

plaintiffs to its response to Interrogatory No. 4 and states it has no responsive documents.

### Request No. 4

Copies of all documents concerning the press release entitled "New URMC Start-Up Introduces Statistical Analysis Software," including, but not limited to, all documents constituting, reflecting or concerning any communications and media inquiries.

-13-

**Response No. 4**

Responsive documents will be attached to these responses to interrogatories and document requests.

**Request No. 5**

A copy of the Pfizer memorandum identified in the press release entitled "New URMC Start-Up Introduces Statistical Analysis Softwear" as "acknowledge[ing] that R is already a significant component of its statistical core technology and that the company is in need of a supported version of the software."

**Response No. 5**

A copy of the Pfizer memorandum referenced in the June 22, 2007 press release is contained within the documents being produced in connection with these responses.

**Request No. 6**

Copies of all documents referring to or reflecting communications, whether oral or written (including electronic), that you have ever had with Warnes and/or Random Technologies or any individual acting on either of their behalf, concerning:

      a.    Random Technologies;

      b.    Any R Statistical Software Products in which Warnes and/or Random Technologies were involved with in any way;

      c.    Any press releases or draft press releases regarding any R Statistical Analysis Software Products;

      d.    Plaintiffs, Plaintiffs' claims or Plaintiffs' R Statistical Analysis Software Products,

      e.    The letter to Warnes on which you were copied, dated June 27, 2007 from Robert Duanne, or the letter to Warnes on which you were copied, dated July 18, 2007 from William J. Speranza;

      f.    Any investigation or discipline of Warnes by URMC; and

-14-

g.    The Lawsuit or any claims in any way related to the Lawsuit.

**Response No. 6**

a-g.    URMC objects to this request because it is overly broad and not reasonably related to the claims asserted in plaintiffs' complaint.  Without waiving these objections, URMC refers plaintiffs to the documents being produced with these responses.

**Request No. 7**

Copies of all documents constituting, reflecting or concerning any communications between you or anyone acting on your behalf, including, but not limited to, Daniel Purcell and any of their lawyers, with Warnes and/or Random Technologies or anyone acting on either of their behalf, including, but not limited to, any of their lawyers.

**Response No. 7**

URMC objects to this request because it is overly broad and not reasonably related to the claims asserted in plaintiffs' complaint.  URMC further objects to this request because it is duplicative of previous requests.  Finally, URMC objects to this request because it is designed solely to elicit information regarding URMC's communications with its attorneys regarding this lawsuit which is not an appropriate subject for discovery.

**Request No. 8**

Copies of all documents concerning Warnes' URMC employment, including, but not limited to, a copy of any correspondence, employment and related contracts, and any curriculum vitae and other documents submitted in connection with the interview and hiring process.

**Response No. 8**

URMC objects to this request because it is overly broad and not reasonably related to the claims asserted in plaintiffs' complaint.  Without waiving these objections, URMC states that relevant documents are being provided with these responses.

**Request No. 9**

Copies of all documents concerning any investigation or discipline by you of Warnes relating to the R Statistical Analysis Software Products and/or claims made in the Lawsuit or claims threatened against Warnes or Random Technologies by URMC.

**Response No. 9**

URMC objects to this request because it is overly board and not reasonably related to the claims asserted in plaintiffs' complaint. URMC further objects to the extent the request seeks production of documents that are protected by attorney-client and are work product privileges. Without waiving these objections, URMC refers plaintiffs to the relevant documents that are being produced with these responses.

**Request No. 10**

Copies of all licensing agreements concerning the use of R Statistical Analysis Software products involving Warnes and/or Random Technologies in any way and all documents relating in any way to those agreements.

**Response No. 10**

URMC is unaware of any documents in its possession that are responsive to this request.

**Request No. 11**

Copies of all contracts, including but not limited to indemnification or settlement agreements, that you have entered into with Warnes and/or Random Technologies.

-16-

**Response No. 11**

      URMC is unaware of any documents in its possession that are responsive to this request.

**Request No. 12**

      Copies of all documents, if any, to support any defenses that you assert in the Lawsuit.

**Response No. 12**

      URMC has produced all documents in its possession that are potentially relevant to plaintiffs' claims in this action. Upon information and belief, any additional relevant documents, including documents that will support URMC's affirmative defenses, are in the possession of plaintiffs and/or co-defendants.

October 6th, 2009

WARD NORRIS HELLER & REIDY LLP

By:   /s/ Daniel P. Purcell  
      Daniel P. Purcell
*Attorneys for Defendant URMC*
300 State Street
Rochester, NY 14614
Tel:   (585) 454-0740
Fax:   (585) 231-1909
dpp@wnhr.com

TO:   DONALD A.W. SMITH, P.C.
      Donald A.W. Smith, Esq.
      125 Sully's Trail
      Suite 7
      Pittsford, NY 14534
      Tel:   (585) 381-3866
      Fax:   (585) 381-6907
      don@donsmithlaw.com

WIGGIN AND DANA LLP
Bethany L. Appleby, Esq.
P.O. Box 1832
New Haven, CT 06508-1832
Tel:    (203) 498-4496
Fax:    (203) 782-2889

*Attorneys for Plaintiffs Scientific Computing Associates, Inc. and
Revolutionary Computing, Inc.*


Mr. Gregory Warnes
*Pro Se*
20 Wandering Trail
Pittsford, NY 14534

## **VERIFICATION**

STATE OF NEW YORK    )
                           ) SS:
COUNTY OF MONROE    )

      J.E. (Johnny) Fahner-Vihtelic, being duly sworn, deposes and says:

      I am the Deputy Director & Associate Director for Physical Sciences, Office of Technology Transfer, University of Rochester Medical Center ("URMC"), a defendant in this action. I have read the foregoing Responses and Objections by URMC to Plaintiffs' First Interrogatories and Request for Documents. To the extent that I have personal information concerning these responses, I believe them to be truthful and accurate. To the extent I do not have personal information concerning these responses, to the best of my knowledge and belief, these responses are truthful and accurate, based on the information available from the non-privileged books and records of URMC.

                                /s/ J.E. (Johnny) Fahner-Vihtelic
                                J.E. (Johnny) Fahner-Vihtelic

Sworn to before me this
6th day of October, 2009

/s/ Laura K. McKnight
Notary Public