## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF NEW YORK

---

**SCIENTIFIC COMPUTING ASSOCIATES, INC., and REVOLUTION COMPUTING, INC.,**

              **Plaintiffs,**

      -vs-

**GREGORY R. WARNES, RANDOM TECHNOLOGIES, LLC, and THE UNIVERSITY OF ROCHESTER MEDICAL CENTER,**

          **Defendants.**

              **ANSWER, AFFIRMATIVE DEFENSES**

              **07-CV-6351T(P)**

---

**GREGORY R. WARNES**

        **Counterclaim Plaintiff,**

      -vs-

**SCIENTIFIC COMPUTING ASSOCIATES, INC., REVOLUTION COMPUTING, INC., and MARTIN SCHULTZ, RICHARD SCHULTZ, BEVERLY THALBURG SHULTZ, KIRK METTLER, and STEVE WESTON**

       **Counterclaim Defendants.**

              **COUNTERCLAIMS**

              **07-CV-6351T(P)**

---

### ANSWER TO THE PLAINTIFF'S AMENDED COMPLAINT

Defendant **GREGORY R. WARNES ("WARNES")** for his answer to the plaintiffs' amended complaint responds as follows:

### NATURE OF THE ACTION

1. Denies the allegations in paragraph 1 of the amended complaint.

2. Denies the allegations in paragraph 2 of the amended compliant.

3. Admits the allegations contained in paragraph 3 of the amended complaint.

4. Denies the allegations contained in paragraph 4 of the amended complaint.

**THE PARTIES**

5.  Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 5 of the amended complaint.

6.  Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 6 of the amended complaint.

7.  Admits the allegations of paragraph 7 of the amended complaint.

8.  Denies the allegations of paragraph 8 of the amended complaint.

9.  Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 9 of the amended complaint.

**FACTS**

10. Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 10 of the amended complaint.

11. Denies the allegations in paragraph 11.

12. Admits the allegations of paragraph 12, but denies that the license under which R is provided, namely the GNU General Public License Version 2, specifies, requires, or has any relationship to cost.

13. Denies the allegation in paragraph 13 of the amended complaint.

14. Denies the allegation in paragraphs 14 of the amended complaint.

15. Denies knowledge or information to form a belief as to the allegations of paragraph 15 of the amended complaint.

16. Denies the allegations in paragraph 16 of the amended complaint.

17. Denies knowledge or information to form a belief as to the allegations of paragraph 17 of the amended complaint.

18. Denies knowledge or information to form a belief as to the allegations of paragraph 18 of the amended complaint.

19. Denies knowledge or information to form a belief as to the allegations of paragraph 19 of the amended complaint.

20. Denies knowledge or information to form a belief as to the allegations of paragraph 20 of the amended complaint.

21. Admits the allegations in paragraph 21 of the amended complaint.

22. Admits the allegations in paragraph 22 of the amended complaint.

23. Denies the allegations of paragraph 23 of the amended complaint.

24. Denies the allegations of paragraph 24 of the amended complaint.

25. Denies the allegations of paragraph 25 of the amended complaint.

26. Denies the allegations of paragraph 26 of the amended complaint, except to admit that WARNES was an employee of Pfizer Inc ("Pfizer") before his employment at the University of Rochester.

27. Denies the allegations of paragraph 27 of the amended complaint.

28. Denies the allegations of paragraph 28, except to admit that WARNES received a letter from Scientific Computing dated June 27, 2007 asserting various claims.

29. Denies the allegations of paragraph 29.

30. Denies the allegations of paragraph 30.

31. Denies the allegations of paragraph 31.

32. Denies the allegations of paragraph 32.

33. Denies the allegations of paragraph 33.

34. Denies the allegations of paragraph 34.

35. Admits that URMC purchased software in the University of Rochester Medical Center
    Department of Biostatistics and Computational Biology, but denies the remaining allegations
    of paragraph 35.

36. Denies the allegations of paragraph 36.

37. Denies the allegations of paragraph 37.

38. Denies the allegations of paragraph 38.

39. Denies the allegations of paragraph 39.

<u>COUNTS</u>

**COUNT I – FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

40. WARNES incorporates by reference its responses to the foregoing paragraphs as though fully
    set forth herein.

41. Denies the allegations of paragraph 41.

42. Denies the allegations of paragraph 42.

43. Denies the allegations of paragraph 43.

44. Denies the allegations of paragraph 44.

**COUNT II - COUNT I – FALSE REPRESENTATION OF 15 U.S.C. § 1125(a)**

45. WARNES incorporates by reference its responses to the foregoing paragraphs as though fully
    set forth herein.

46. Denies the allegations of paragraph 46.

47. Denies the allegations of paragraph 47.

48. Denies the allegations of paragraph 48.

49. Denies the allegations of paragraph 49.

50. Denies the allegations of paragraph 50.

## COUNT III – UNFAIR COMPETITION

51. WARNES incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

52. Denies the allegations of paragraph 52.

53. Denies the allegations of paragraph 53.

54. Denies the allegations of paragraph 54.

55. Denies the allegations of paragraph 55.

56. Denies the allegations of paragraph 56.

57. Denies the allegations of paragraph 57.

58. Denies the allegations of paragraph 58.

59. Denies the allegations of paragraph 59.

60. Denies the allegations of paragraph 60.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

61. WARNES incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

62. Denies the allegations of paragraph 62.

63. Denies the allegations of paragraph 63.

64. Denies the allegations of paragraph 64.

65. Denies the allegations of paragraph 65.

## COUNT V – BREACH OF LICENSE AGREEMENT

66. WARNES incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

67. Denies the allegations of paragraph 67.

68. Denies the allegations of paragraph 68.

69. Denies the allegations of paragraph 69.

### COUNT V – VIOLATION OF CUTPA

70. WARNES incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

71. Denies the allegations of paragraph 71.

72. Denies the allegations of paragraph 72.

73. Denies the allegations of paragraph 73.

74. Denies the allegations of paragraph 74.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE – FAIL TO STATE A CLAIM

75. The amended complaint fails to state a claim upon which relief can be granted against WARNES.

### SECOND AFFIRMATIVE DEFENSE – GOOD FAITH USE

76. Use by WARNES of the phrases "R PRO" and/or "RPRO" and "NETWORKSPACES" was in good faith, was fully in accordance with an agreement between the parties consenting to such use, and ceased promptly upon Plaintiffs demands to cease use of said phrases. Consequently, Plaintiffs trademark claims do not meet the definition of infringement in 15 USC §1114(1), and are barred in their entirety.

### THIRD AFFIRMATIVE DEFENSE – LACHES, ESTOPPEL, AND ACQUIESCENCE

77. The claims asserted in the amended complaint are barred pursuant to 15 USC §1115(b)(9), under the doctrines of laches, estoppel, and/or acquiescence.

### FOURTH AFFIRMATIVE DEFENSE – FRAUD IN OBTAINING "RPRO" MARK

78. Plaintiff's right to the use of "RPRO" mark was obtained fraudulently; hence plaintiffs' claims are barred in whole or in part pursuant to 15 USC §1115(b)(1).

### FIFTH AFFIRMATIVE DEFENSE – DESCRIPTIVE MARK

79. "RPRO" is a merely descriptive mark under 15 USC §1052(e), has not and does not now qualify as having "secondary meaning" under 15 USC §1052(f), and is therefore ineligible under 15 USC §1052, consequently plaintiffs' claims are barred in whole or in part.

### SIXTH AFFIRMATIVE DEFENSE – STATUTES OF LIMITATIONS

80. Plaintiff's claims are barred by one or more applicable statutes of limitation.

### SEVENTH AFFIRMATIVE DEFENSE – UNCLEAN HANDS

81. Any claims for equitable relief are barred by the doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE DAMAGES

82. Plaintiffs have failed to mitigate their damages, if any.

## COUNTERCLAIMS

For its counterclaims against **SCIENTIFIC COMPUTING ASSOCIATES, INC, and REVOLUTION COMPUTING, INC.** (together hereafter "**REVOLUTION COMPUTING**"), and **MARTIN SCHULTZ, RICHARD SCHULTZ, BEVERLY THALBURG SHULTZ, KIRK METTLER, and STEVE WESTON** (together hereafter "**PARTNERS**") the counterclaim plaintiff **GREGORY R. WARNES ("WARNES")** alleges as follows:

## JURISDICTION

1. This court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338 because it involves claims arising under the Lanham Act.

2. The court has supplemental jurisdiction over Counterclaim Plaintiff's state law claims under 28 U.S.C. § 1367.

## PARTIES

3. **GREGORY R. WARNES ("WARNES")** is an individual who resides at 20 Wandering Trail, Pittsford, NY 14534.

4. **SCIENTIFIC COMPUTING ASSOCIATES, INC.** ("SCA") is a corporation organized and existing under the laws of the State of Connecticut, having its principle place of business at One Century Tower, 265 Church Street, New Haven, Connecticut 06350.

5. Counterclaim Defendant **REVOLUTION COMPUTING, INC.** ("REVOLUTION") is a

corporation organized and existing under the laws of the State of Delaware, having its

principle place of business at One Century Tower, 265 Church Street, New Haven,

Connecticut 06350.

6. Counterclaim Defendant **RICHARD SCHULTZ** is an individual who, on information and

belief, resides in or near New Haven, CT, and is Chief Executive Officer of **REVOLUTION**

**COMPUTING, INC.**

7. Counterclaim Defendant **MARTIN SCHULTZ** is an individual who, on information and

belief, resides in or near Woodbridge, CT, with mailing address PO Box 3529, Woodbridge,

CT 06525-0102, is Chief Science Officer of **REVOLUTION COMPUTING, INC.,** is or

was a principal or owner of **SCIENTIFIC COMPUTING ASSOCIATES, INC.,** and is the

Arthur K. Watson Professor of Computer Sciences at Yale University, in New Haven, CT.

8. Counterclaim Defendant **BEVERLY THALBURG SCHULTZ** is an individual who, on

information and belief, resides in or near Woodbridge, CT, with mailing address PO Box

3529, Woodbridge, CT 06525-0102, and is or was a principal or owner of Defendant

**SCIENTIFIC COMPUTING ASSOCIATES, INC.**

9. Counterclaim Defendant **KIRK METTLER** is an individual who, on information and belief,

resides in or near New Haven, CT, and is Chief Financial Officer of **REVOLUTION**

**COMPUTING, INC.**

10. Counterclaim Defendant **STEVE WESTON** is an individual who, on information and belief,

resides in or near New Haven, CT, and is Director of Engineering at **REVOLUTION**

**COMPUTING, INC.**

## FACTS

11. During early 2005, WARNES approached Martin Schultz and other staff of Scientific Computing Associates ("SCA") with the concept of creating a business to develop and market an enhanced version of the open-source "R" statistical analysis system.

12. In order to develop this opportunity, WARNES entered into a partnership with Martin Schultz, Richard Schultz, Beverly Thalburg Schultz, Kirk Mettler, and Steve Weston (PARTNERS) to form a new business venture based on this concept.

13. As his contribution to the partnership, WARNES brought unique experience and reputation as a Ph.D. statistician in a major Pharmaceutical company, an expert in the R open-source statistical package, a long-time contributor to the R Project which develops and maintains the R open-source statistical package, and a particular understanding of the potential benefits of a commercial version of R to Pharmaceutical and other business organizations.

14. In exchange for WARNES participation in this partnership, it was agreed orally that WARNES would receive (1) Substantial ownership equity in the resulting company, at least equal to that assigned to the other initial partners (i.e. not less than 20%) (2) A vice-president level position, initially described as "Science Guy", with a starting annual salary of $180,000 once venture or other funding was obtained.

15. These terms were repeatedly affirmed and discussed orally by WARNES and PARTNERS and were included or referenced in various written documents.

16. In addition, it was agreed that the new company would purchase Scientific Computing Associates and all of its assets and personnel, and that until the new company was funded, SCA would be used as the operational organization.

17. However, subsequent actions by PARTNERS have demonstrated that PARTNERS did not abide by, nor ever intended to fully abide by the partnership agreement.

18. Under this partnership agreement, WARNES created or substantially contributed to all of the core business ideas, business methods, intellectual property, and technology used to establish REVOLUTION COMPUTING as a viable enterprise, inter-alia:

   a. Generating the idea creating and marketing of a commercially supported version of the "R" statistical computing software package;

   b. Describing the necessary features, attributes, and approaches necessary for a commercial version of "R";

   c. Use of his reputation and influence as a Pharmaceutical Statistician at Pfizer Global Research and Development to arrange for a contract for SCA to create the "NETWORKSPACES" (tm) parallel computing extension for the "R" statistical computing software package;

   d. Contributed customer requirements, design ideas, written documentation, and some source code to the NETWORKSPACES(tm) product;

   e. Invented the name "REvolution Computing";

   f. Suggested the potential product names that lead to the selection of the name "RPRO" for the commercially supported version of "R";

   g. Wrote the product sheets describing the features and benefits of the "RPRO" and related software packages;

   h. Contributed to the product data sheets describing the features and benefits of the "NETWORKSPACES" software package;

   i. Wrote a substantial fraction of the REvolution Computing business plan, in particular the

text related to the target market, potential competition, benefits of the proposed approach, and business model;

j.  Used his name recognition as a long-term participant in the "R" software community to enable SCA/REvolution Computing to develop relationships with corporations, individuals, and organizations in the "R" software community;

k.  Used his name recognition as a well-respected Pharmaceutical Statistician to enable SCA/REvolution Computing to develop relationships with corporations, individuals, and organizations within the Pharmaceutical R&D community;

l.  Gave or participated in the first public presentations introducing REvolution Computing to the R developer and user community, including those at the 2nd International R User Conference (UseR! 2006), in Vienna, Austria on Jun 15-17, 2006, and the 2006 Joint Statistical Meetings (JSM 2006) in Seattle, WA on Aug 6-10, 2006; and

m.  Created or contributed to the marketing materials, banners, and signs for, and then participated in SCA/REvolution Computing's first public marketing efforts, a trade show booth at the 2006 Joint Statistical Meetings (JSM 2006) in Seattle, WA on Aug 6-10, 2006.

19. Prior to WARNES participation, neither the other members of the partnership nor SCA/REvolution Computing had any experience, presence, or awareness of the "R" software system, nor of its development community, nor of the need for a commercially supported version of "R"; they had no expertise, experience, presence or awareness of the market for statistical software tools; they had no expertise, experience, presence or awareness of the market for statistical software consulting; and they had no expertise, experience, presence or awareness of the Pharmaceutical R&D market.

20. Thus, the contributions made by WARNES were both unique and essential to the development and success of SCA/REvolution Computing's business developing and marketing software based on the "R" software system.

21. As full participation in the partnership was not possible under the terms of WARNES' employment contract with Pfizer, and the other partners had informed WARNES that there were insufficient funds to pay WARNES the agreed upon salary, WARNES began to look for alternative employment in the Winter of 2006.

22. In May of 2006, WARNES changed employment, leaving Pfizer, and taking a position, at a substantially lower salary, as an Associate Professor in the Department of Biostatistics and Computational Biology at the University of Rochester, in part to permit full participation in the partnership

23. In the fall of 2006, having established his new employment, and having contributed greatly to the development of the REvolution Computing, WARNES requested that the partnership agreement be formalized.

24. Richard Schultz, representing the other partners, refused to develop any formal written agreement, claiming that it was not possible to create any formal agreement before venture funding was obtained.   This claim was and is obviously false, and caused considerable concern to WARNES, who began to fear that Richard Schultz and the other partners would not honor the original partnership terms.

25. On information and belief, Richard Shultz and the other partners had, in fact, already started negotiations with various organizations including Intel Capital for venture funding and had already decided not to fulfill the agreement made to WARNES, further PARTNERS withheld this information from WARNES.

26. Further, on information and belief, Richard Schultz, acting as agent for the other partners, refused to formalize the partnership agreement with the full intent of unilaterally changing the partnership terms to benefit himself and the other partners at WARNES' expense.

27. The other business partners, namely Martin Schultz, Beverly Thalburg Schultz, Kirk Mettler, and Steve Weston, either explicitly or by inaction, allowed Richard Schultz to act as agent on their behalf and therefore fully share responsibility for his actions on behalf of the partnership.

28. In January 2007, as a consequence of the refusal by Richard Schultz's and the other partners to formalize the partnership agreement, WARNES demanded that the partnership be terminated and that both the other partners and SCA/Revolution Computing cease using intellectual property contributed by WARNES.

29. However, in the interest of allowing an amicable but separate business relationship, WARNES proposed that each party continue development of the business ideas each had initially brought to the business partnership, and that the parties establish a reseller arrangement for the products created by other.  In specific, WARNES and Richard Shultz, acting as agent for the other partners, agreed that:

    a.  WARNES (exclusively) would pursue a business centered on the development and marketing of "RPRO" as a commercially supported version of "R",

    b.  PARTNERS and SCA/Revolution Computing (exclusively) would pursue business centered around the parallel computing "NETWORKSPACES" extensions for "R",

    c.  WARNES' would be permitted to resell the "NETWORKSPACES" and other products on behalf of PARTNERS and SCA/Revolution Computing, and

    d.  PARTNERS and SCA/Revolution Computing would be permitted to resell WARNES'

"RPRO" and related products on WARNES behalf.

30. Having received agreement that the plaintiffs would comply with the demand to cease using his intellectual property related to commercialization of the "R" software, WARNES began work to form a new company to implement these ideas.

31. During January 2007, WARNES performed a trademark search for the name "R PRO" (note the space), and finding no evidence of trademark filings under this name, began work to create a distinctive logo and to file for trademark registration, resulting in a trademark filing for "R PRO" on March 27, 2007 (Serial Number 77141314).

32. From January 2007 through June 2007, WARNES pursued the development of his new business without communication with SCA/REvolution Computing or any of the former partners.

33. On June 26th, 2007, WARNES received a Notice of Allowance to SCA for the "RPRO" trademark  (Serial Number 78940815) from the United States Patent and Trademark office (USPTO).

34. On June 29th, 2007, WARNES received a letter dated June 27th from Robert Dunne, General Counsel for SCA, claiming trademark infringement for the "RPRO" and "NETWORKSPACES" and demanding various actions within 15 days.

35. Only upon receipt of the Notice of Allowance and Letter from Robert Dunne was WARNES made aware that the other partners and SCA/REvolution Computing had continued to use and benefit from WARNES' intellectual property without appropriate contract or agreement, without fair and reasonable compensation, and in direct violation of the separation agreement.

36. Having received both the USPTO Notice and the letter from Dunne, and preferring to avoid

costly and time consuming litigation, WARNES immediately started work to remove all

references to the phrases "RPRO", "R PRO", and "NETWORKSPACES" from his business

materials and repeatedly attempted to contact Dunne (through URMC General Counsel) to

inform SCA of the intent to comply.

37. Dunne was either unavailable or chose not to respond to these repeated telephone messages

until after the filing of the Plaintiffs original complaint on July 18, 2007.

38. As WARNES had made every reasonable effort to communicate willingness to comply with

Plaintiff's demands prior to the filing of the Plaintiffs original complaint, the Plaintiff's

lawsuit is both meritless and unnecessary.

39. In fact, on or before July 23rd, 2007, WARNES had stopped using and had completely

removed all references to the phrases "RPRO", "R PRO", and "NETWORKSPACES" from

all business products, marketing materials, etc. Further, WARNES has not used any of the

phrases "RPRO", "R PRO", and "NETWORKSPACES" in any infringing manner from July

23rd, 2007 through the present.

40. Although Richard Schultz (representing the other partners and SCA/REvolution Computing)

agreed verbally with the request to cease using WARNES' intellectual property, it has

become clear that he, the other partners, and SCA/REvolution Computing did continue, and

do continue, to use said intellectual property without WARNES' permission, without

appropriate contract or agreement, and without fair and reasonable compensation.

41. While WARNES has made every effort to fulfill the original partnership agreement, the

subsequent agreement between the partners, and the demands stated in Mr. Dunne's letter of

July 27th 2007, the other partners and SCA/REvolution Computing have not fulfilled the

terms of any of the agreements, and have never compensated WARNES for use of his effort,

intellectual property, and reputation; and have benefitted, and do continue to benefit unlawfully from WARNES efforts, intellectual property, and reputation.

42. In addition to refusing to recognize and compensate WARNES for his contributions, the other partners (through SCA/REvolution Computing) have filed and continue to pursue a meritless lawsuit intended to prevent WARNES from making lawful use of the work products and intellectual property he created.

43. Further the other partners and SCA/REvolution Computing have refused every effort since January 2007, both before and after the filing of the Plaintiffs original complaint, to negotiate fair and reasonable compensation, instead demanding terms that would prohibit WARNES from making lawful use of the fruits of his own labor and intellectual property both now and in the future, and further insisting not only that WARNES receive no monetary or other compensation, but that WARNES reimburse Plaintiff's legal fees.

44. Plaintiff's continued use of WARNES' intellectual property, coupled with the Plaintiffs filing and continued prosecution of this lawsuit, has unfairly prevented WARNES from obtaining funding for RTL, making RTL unable to both develop and market products effectively.

45. These actions have prevented RTL from competing on a fair and equitable basis in the marketplace.

46. These actions have reduced WARNES's income.

47. By preventing WARNES from deriving income from his business activities, WARNES was prevented from recovering his initial investments in a timely manner, forcing WARNES to file Chapter 13 Bankruptcy on July 11, 2008.

48. On information and belief REVOLUTION COMPUTING is beneficiary of and successor to the partnership agreement between PARTNERS and WARNES, and all subsequent

partnership agreements (whether written or oral) between PARTNERS.

49. As asserted in paragraphs 19 and 20 of the amended complaint, REVOLUTION

COMPUTING is the successor and beneficiary of SCA in all matters relevant to this action.

50. Therefore REVOLUTION COMPUTING is liable for the actions performed by members,

officers, employees or other agents of both PARTNERS and SCA.

## COUNTER CLAIM COUNTS

### COUNT I - BREACH OF CONTRACT – PARTNERSHIP

51. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs

as though fully set forth herein.

52. PARTNERS entered into an oral contract with WARNES to form a business partnership.

53. WARNES fulfilled his obligations under this contract, providing effort, intellectual property,

and reputation.

54. Having received WARNES' contributions, PARTNERS did refuse and continue to refuse to

fulfill their obligations under the contract, including promised employment and equity

ownership in REVOLUTION COMPUTING.

### COUNT II - BREACH OF CONTRACT – OFFER OF EMPLOYMENT

55. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs

as though fully set forth herein.

56. PARTNERS entered into an oral contract with WARNES to hire WARNES as a Vice

President in REvolution Computing at an annual salary of $180,000, once venture or other

funding was obtained.

57. On information and belief, Intel Capital invested substantial funding into REVOLUTION COMPUTING in January 2008.

58. Even while benefitting from WARNES' contributions, PARTNERS did refuse and continue to refuse to provide WARNES the agreed-upon employment at REVOLUTION COMPUTING.

**COUNT III - BREACH OF CONTRACT – SEPARATION OF BUSINESS INTERESTS**

59. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

60. In January 2007, PARTNERS entered into an oral contract with WARNES to dissolve the partnership, to cease using WARNES intellectual property, to separate their business interests, and for each party to be permitted act as a reseller of the other's products.

61. Under this agreement, WARNES (exclusively) would pursue a business centered on the development and marketing of "RPRO" as a commercially supported version of "R"; PARTNERS and SCA/Revolution Computing (exclusively) would pursue business centered around the parallel computing "NETWORKSPACES" extensions for "R"; and WARNES' would be permitted to resell the "NETWORKSPACES" and other products on behalf of PARTNERS and SCA/Revolution Computing.

62. While WARNES fulfilled his obligations under this agreement, PARTNERS and REVOLUTION did not.  In specific, PARTNERS and REVOLUTION did and do continue to use WARNES' intellectual property; did and do pursue development and marketing of "RPRO" as a commercially supported version of "R"; and have refused to allow WARNES, to act as a reseller for the "NETWORKSPACES" parallel computing extension for R.

**COUNT IV - FRAUD – CLAIMED IMPOSSIBILITY TO FORMALIZED**

## PARTNERSHIP AGREEMENT

63. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

64. PARTNERS (through Richard Schultz) refused to formalize the partnership and further claimed that it was not possible to create any formal partnership agreement before venture funding was obtained.

65. At that time PARTNERS did know that this statement was false.

66. Further, on information and belief, PARTNERS were at that time in negotiations for venture funding, which funding would have benefitted WARNES under the existing partnership agreement.

67. PARTNERS did make this statement to prevent WARNES from asserting his rights under the existing partnership agreement and benefitting from said venture funding.

68. PARTNERS did hide the existence of and details of the negotiations for said venture funding.

69. WARNES was thus fraudulently induced to demand dissolution of the partnership agreement.

70. Further, WARNES was fraudulently prevented from benefitting from said venture funding, including, but not limited to, promised employment by and equity ownership in REVOLUTION COMPUTING.

## COUNT V - FRAUD – SEPARATION OF BUSINESS INTERESTS

71. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

72. In January 2007, PARTNERS entered into an oral contract with WARNES to dissolve the partnership, to cease using WARNES intellectual property, to separate their business interests, and for each party to be permitted act as a reseller of the other's products.

73. Under this agreement, WARNES (exclusively) was to pursue development and marketing of "RPRO" as a commercially supported version of "R".

74. Under this agreement PARTNERS (exclusively) were to pursue development and marketing of "NETWORKSPACES" as a parallel computing extension for "R"

75. PARTNERS did make this agreement fraudulently; fully intending to continue to use WARNES intellectual property and to continue to pursue development and marketing of "RPRO" as a commercially supported version of "R".

76. PARTNERS made this agreement to prevent WARNES from pursing his rights under the previous partnership contract.

77. PARTNERS did not at the time intend to fulfill this agreement, and indeed, have not done so.

78. WARNES did suffer, and continues to suffer, considerable financial loss, including both direct loss of promised employment and equity ownership in REVOLUTION COMPUTING and indirect loss due to the inability of WARNES to make lawful and exclusive use of his intellectual property.

## COUNT VI - FRAUDULENT REGISTRATION, MAINTENANCE, AND
### ENFORCEMENT OF TRADEMARK

79. WARNES incorporate by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

80. PARTNERS entered into an oral contract with WARNES to form a business partnership.

81. Based on this partnership agreement WARNES invented and contributed the name "REvolution Computing" for the venture to develop a commercially supported version of "R".

82. Based on this partnership agreement WARNES invented and contributed the name "RPRO" for a commercially supported version of "R".

83. Having received WARNES' contributions, PARTNERS did refuse and continue to refuse to fulfill their obligations under the contract, including promised employment and equity ownership in REVOLUTION COMPUTING.

84. PARTNERS and REVOLUTION COMPUTING have obtained and do use the trade names "RPRO" and "REVOLUTION COMPUTING" as a consequence of fraud and breach of contract.

85. Consequently, PARTNERS and REVOLUTION COMPUTING were not and are not now legally entitled to claim ownership or use of the marks "RPRO" and "REVOLUTION COMPUTING".

86. On information and belief PARTNERS via REVOLUTION COMPUTING have fraudulently asserted ownership and right to use the names marks "RPRO" and "REVOLUTION COMPUTING" in additional documents filed with the United States Patent and Trademark Office.

## COUNT VII - MISAPPROPRIATION OF TRADE SECRETS

87. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

88. PARTNERS entered into an oral contract with WARNES to form a business partnership.

89. Based on this partnership agreement WARNES created and shared core business ideas, business methods, intellectual property, and technology that were or are trade secrets.

90. Having received WARNES' contributions, PARTNERS did refuse and continue to refuse to fulfill their obligations under the contract, including promised employment and equity ownership in REVOLUTION COMPUTING.

91. PARTNERS and REVOLUTION COMPUTING did and do continue retain and use these trade secrets.

92. PARTNERS and REVOLUTION COMPUTING have obtained and do use these trade secrets as a consequence of fraud and breach of contract.

93. As, PARTNERS and REVOLUTION COMPUTING have no legal basis for obtaining and using these trade secrets.

94. Therefore, PARTNERS and REVOLUTION COMPUTING have misappropriated trade secrets rightfully belonging to WARNES.

95. PARTNERS and REVOLUTION COMPUTING have received and to receive substantial financial and other benefit from the use of said trade secrets.

## COUNT VIII - VIOLATION OF COPYRIGHT

96. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

97. PARTNERS entered into an oral contract with WARNES to form a business partnership.

98.  WARNES was primary or exclusive author of numerous documents, including the product specifications, sales materials, and presentations for the "RPRO" product. As primary or exclusive author, copyright in these works initially vests in WARNES per 17 U.S.C. § 201(a)

99.  WARNES also contributed substantial portions of many other documents ("Shared Documents"), including the REVOLUTION COMPUTING business plan. WARNES is thus co-owner of copyright to these documents per 17 U.S.C. § 201(a)

100. Having received WARNES' contributions, PARTNERS did refuse and continue to refuse to fulfill their obligations under the contract, including promised employment and equity ownership in REVOLUTION COMPUTING.

101. All of WARNES contributions were made under the terms of the partnership agreement, which PARTNERS have not honored. Thus there was and is no valid partnership agreement between WARNES and PARTNERS or between WARNES and REVOLUTION COMPUTING.

102. There was and is no employment agreement between WARNES and PARTNERS or between WARNES and REVOLUTION COMPUTING.

103. Consequently, neither the documents authored exclusively or primarily by WARNES, nor the documents to which WARNES made substantial contributions are "Works Made for Hire" as defined by 17 U.S.C. § 201(b).

104. WARNES thus retains exclusive copyright to documents authored exclusively or primarily by WARNES, including the product specifications, sales materials, and presentations for the "RPRO" product. Per 7 U.S.C. § 106 this exclusive copyright extends to the creation of "derivative works".

105. WARNES also retains joint copyright to documents to which WARNES contributed

substantially, including the REVOLUTION COMPUTING business plan. Per 17

U.S.C. § 106 this joint copyright extends to the creation of "derivative works".

106. In January 2007 WARNES demanded that PARTNERS and REVOLUTION

COMPUTING cease using his intellectual property and PARTNERS agreed to do so.

107. On information and belief, without WARNES' permission, PARTNERS and

REVOLUTION COMPUTING have and do continue to reproduce, prepare derivative

works, and distribute copies of works to which WARNES has exclusive copyright,

including the RPRO product specifications, sales materials, and presentations.

108. PARTNERS and REVOLUTION COMPUTING are hence infringing upon copyright as

defined under 17 U.S.C. § 501.

**COUNT IX - UNFAIR COMPETITION**

109. WARNES incorporates by reference the allegations in all previous counterclaim

paragraphs as though fully set forth herein.

110. As detailed in previous counterclaim paragraphs, PARTNERS and REVOLUTION

COMPUTING have misappropriated trade secrets, violated copyright, made fraudulent

trademark filings, breached multiple contracts, committed multiple frauds, and

misappropriated trade secrets.

111. Further PARTNERS and REVOLUTION COMPUTING have repeatedly and falsely

asserted, by word and by action, and with full knowledge that these assertions are false,

that they (and not WARNES) are the originators and proper owners of the core business

ideas, business methods, intellectual property, technology, and trademarks used to establish

and operate REVOLUTION COMPUTING.

112. These multiple violations have individually and collectively resulted in unfair competition

under New York State law, Connecticut State law, and Common Law.

### COUNT X - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

113. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

114. PARTNERS and REVOLUTION COMPUTING have repeatedly and falsely asserted, by word and by action, and with full knowledge that these assertions are false, that they (and not WARNES) are the originators and proper owners of the core business ideas, business methods, intellectual property, technology, and trademarks used to establish and operate REVOLUTION COMPUTING.

115. On information and belief, PARTNERS and REVOLUTION COMPUTING have disseminated other false and slanderous information to WARNES' current and potential clients .

116. These false and slanderous statements have individually and collectively unlawfully interfered with WARNES's established and prospective business relationships, and constitute tortious interference with business relations under New York State law, Connecticut State law, and Common Law.

### COUNT XI - DECEPTIVE AND UNFAIR TRADE PRACTICES

117. WARNES incorporates by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

118. PARTNERS and REVOLUTION COMPUTING have repeatedly and falsely asserted, by word and by action, and with full knowledge that these assertions are false, that they (and not WARNES) are the originators and proper owners of the core business ideas, business methods, intellectual property, technology, and trademarks used to establish and operate REVOLUTION COMPUTING.

119. On information and belief, PARTNERS and REVOLUTION COMPUTING have disseminated other false and slanderous information to current and potential clients of WARNES.

120. In addition, PARTNERS and REVOLUTION COMPUTING have violated copyright, and made fraudulent trademark filings.

**121.** Individually and collectively, these actions constitute deceptive and unfair trade practices under New York State law, Connecticut State law, and Common Law.

### COUNT XII - MALICIOUS PROSECUTION AND ABUSE OF PROCESS

122. WARNES incorporate by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

123. PARTNERS and REVOLUTION COMPUTING are and have been fully aware that the assertions in both the original and amended complaint are fraudulent.

124. With full knowledge of the falsehood of the asserted claims, PARTNERS and REVOLUTION COMPUTING did file and continue to pursue the current lawsuit against WARNES.

125. These actions constitute Malicious Prosecution and Abuse of Process.

### COUNT XIII - BREACH OF FIDUCIARY DUTY

126. WARNES incorporate by reference the allegations in all previous counterclaim paragraphs as though fully set forth herein.

127. PARTNERS entered into an oral contract with WARNES to form a business partnership.

128. As members of a partnership, PARTNERS had a fiduciary duty to protect the WARNES' interests.

129. PARTNERS not only failed to protect WARNES' interests, they engaged in fraudulent

activity directly against the WARNES' legitimate interests as a partner.

130. PARTNERS have thus fundamentally and irredeemably breached their fiduciary duty as
members of the partnership.

### PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim Plaintiff **WARNES** demands judgment against the Counterclaim
Defendants **REVOLUTION COMPUTING** and **PARTNERS** as follows:

### DISMISSAL OF CLAIMS

A. Dismissal of Plaintiffs' claims;

### DECLARATIONS

B. A declaration that PARTNERS entered into a binding partnership agreement contract with
WARNES.

C. A declaration that PARTNERS entered into a binding separation agreement with WARNES.

D. A declaration that as beneficiary of and successor to both SCA and the partnership agreement
between PARTNERS and WARNES, that REVOLUTION COMPUTING is jointly liable
with PARTNERS for the conduct of PARTNERS, SCA, and REVOLUTION COMPUTING.

E. A declaration that PARTNERS and REVOLUTION COMPUTING breached the partnership
agreements with WARNES.

F. A declaration that PARTNERS and REVOLUTION COMPUTING have breached the
separation agreement with WARNES.

G. A further declaration that PARTNERS and REVOLUTION COMPUTING and have engaged

in fraud, violation of copyright, theft of trade secrets, unfair competition, tortious interference with business relations, deceptive and unfair trade practices, malicious prosecution and abuse of process, and breach of fiduciary duty.

## ENFORCEMENT OF AGREEMENT TERMS

H.  That either the terms of the original partnership agreement, or the terms of the dissolution agreement be enforced, as described in the following paragraphs.

## ORIGINAL PARTNERSHIP AGREEMENT

I.  That Court award WARNES not less than 20% of the total equity assigned, promised, or delivered PARTNERS in REVOLUTION COMPUTING from April 2006 through date of judgment, whether this equity was in the form as stock, stock options, monetary payment, or any other form;

J.  That WARNES be instated as a Vice President of REVOLUTION COMPUTING at a salary of not less than $180,000 augmented with 5% annual increases computed annually from April 2006 through the date of judgment, being approximately $208,373 as of the present date, and that he continue in this position for not less than 5 years from the date of judgment;

K.  That WARNES be granted back-pay at a salary of not less than $180,000/year with an annual increase of not less than 5%, with interest at an annual rate of 6%, from May 2006 through the present date, totaling approximately $680,000 as of the present date;

## TERMS OF SEPARATION AGREEMENT

L.  That Plaintiffs registration of the marks "RPRO" and "REVOLUTION COMPUTING" be cancelled;

M.  That WARNES be assigned exclusive ownership of trademark and associated rights to the phrases "RPRO" and "REVOLUTION COMPUTING";

N.  That Plaintiffs PARTNERS and REVOLUTION COMPUTING and their officers, directors,

principles, agents, servants, employees, successors, assigns, affiliates, licensees,

manufacturers, distributors, and all persons and entities who are in active concert or

participation with any of them be enjoined and restrained during the pendency of this action

and permanently hereafter from

    a.  Making use in commerce, in association with any goods or services advertised, marketed, offered or sold by PARTNERS and REVOLUTION COMPUTING of the phrases or trademarks "RPRO" or "REVOLUTION COMPUTING", or of any name or mark including such phrases, or any variation thereof which is a colorable imitation or confusingly similar to these phrases;

    b.  Copying, distribution, or making use in commerce, in association with any goods or services advertised, marketed, offered or sold by PARTNERS and REVOLUTION COMPUTING of any marketing, sales, or other business materials including text or information obtained from WARNES;

    c.  Marketing, distributing, promulgating or providing any commercial or supported variant, or any software, support, training, or other products or services, related to the "R" statistical software system;

    d.  Making any statement or representation whatsoever that PARTNERS or REVOLUTION COMPUTING is the originator, owner, or developer of the business concept of providing commercial products or services based on the "R" statistical software system;

    e.  Competing unfairly with WARNES in any manner;

    f.  Interfering in any unlawful manner with WARNES' business and customer relationships;

g. Engaging in any other activity, including the effectuation of assignments or transfers of their interests in the "RPRO" and "REVOLUTION COMPUTING" phrases or marks, the business concept of commercially developing and providing goods and services related to the "R" statistical software system, including the formation of other corporations, partnerships, associations, or other entities, or the utilization of any other devices for the purpose of circumventing, evading, or otherwise violating the prohibitions of the Court in this matter;

O. That WARNES be granted damages for lost sales, contract consulting, and other revenues to be determined by the Court;

P. That Court order PARTNERS AND REVOLUTION COMPUTING to account for and pay over to WARNES all income realized by PARTNERS, SCA, and REVOLUTION COMPUTING in connection with their unlawful activities;

## OTHER RELIEF

Q. That WARNES be granted costs, disbursements, and attorneys fees incurred in this action, including the value of time spent by WARNES;

R. That WARNES be awarded full compensatory damages;

S. That WARNES be granted treble damages;

T. For pre- and post-judgment interest as allowed by law; and

U. That Court order such further and additional relief as it may deem just and proper.

## DEMAND FOR TRIAL BY JURY

WARNES hereby request trial by jury for all claims and issues so triable.

Dated: October 19, 2009

By: _____
Gregory R. Warnes, Ph.D. *Pro Se*
20 Wandering Trl.
Pittsford NY, 14534
Tel: (585) 419-6853
Fax:   (585) 672-5085
Email: greg@warnes.net