UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCIENTIFIC COMPUTING ASSOCIATES, INC. AND
REVOLUTION COMPUTING, INC.,

                              Plaintiff,        07-CV-6351

              v.                                **DECISION**
                                                **and ORDER**
GREGORY R. WARNES,

                              Defendant.

_____

## INTRODUCTION

Plaintiffs, Scientific Computing Associates, Inc. and Revolution Computing, Inc. (collectively, "Plaintiffs") bring this action pursuant to 15 U.S.C. §§ 1051 et seq., alleging trademark infringement, specifically false designation of origin, false representation and unfair competition, and violations of New York and Connecticut state law. See Compl. at ¶1. Plaintiffs specifically allege that Defendant, Gregory R. Warnes[1] ("Defendant" or "Warnes"), unlawfully advertised, marketed and offered for sale certain computer software products under names which are registered trademarks of the Plaintiffs, and that Defendant misrepresented the origin of the products to potential customers and unlawfully

_____

[1]Plaintiffs also initially brought claims against Plaintiff's employer, The University of Rochester Medical Center ("URMC"), and a limited liability company allegedly formed by the Plaintiff, Random Technologies, LLC. Plaintiffs stipulated to the dismissal of URMC from this action on March 17, 2010, and this Court dismissed Random Technologies, LLC from this action on March 23, 2010.  Accordingly, Warnes is the only remaining defendant in this action.

interfered with the business relationships between Plaintiffs and their potential customers. See Compl. at ¶ 21-33.

Defendant, proceeding *pro se*, answered the complaint and asserted counterclaims against the Plaintiffs and five other individuals, Martin Schultz, Richard Schultz, Beverly Thalburg Shultz, Kirk Mettler and Steve Weston (collectively, the "Partners"), who are not yet parties to this action.[2] Defendant alleges that the Plaintiffs and the Partners breached an oral partnership agreement, an employment contract and a separation agreement, relating to an alleged business arrangement whereby Defendant agreed to contribute certain intellectual property to the formation of a business (Revolution Computing, Inc.), in return for equity in the company and employment, and that Plaintiffs and the Partners committed several other unlawful acts with respect to this alleged partnership.

Plaintiffs now move to dismiss Defendant's Counter Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing that Defendant has not stated a plausible claim for relief as to any of his thirteen counterclaims. See Pl. Mem of Law at 3 (Docket #85-2). Defendant opposes the motion and argues

---

[2]It appears from the Docket that Warnes has not properly served the Partners with a summons and complaint to enable this Court to properly assert jurisdiction over those individuals. However, this Court will address this issue in its response to a separate Motion for Default Judgment against the five individuals filed by Warnes on June 25, 2010, and a separate Motion to Dismiss Plaintiff's Counterclaims filed by the Partners on July 30, 2010. (Docket #103, 110-112, 114)

that he has stated a plausible claim for relief on each of eleven of his thirteen counterclaims, and he seeks leave to amend his Counter Complaint should this Court find that his factual allegations are insufficient to support a claim for relief.

Defendant, however, concedes that he has not stated a plausible claim for relief for malicious prosecution or abuse of process, accordingly Count XII of Defendant's Counter Complaint is hereby dismissed.  Defendant also concedes that he has not met the registration requirement under 17 U.S.C. § 411 (a) in order to properly assert a cause of action for copyright infringement, accordingly, Count VIII is also dismissed.  Further, for the reasons set forth below, this Court grants in part and denies in part Plaintiffs' Motion to Dismiss, and Defendant's request for leave to amend his Counter Complaint is hereby granted.

## BACKGROUND

The following facts are taken from the Defendant's Answer and Counter Complaint. (Docket #50.)[3]  Warnes became acquainted with the Partners through his employment at Pfizer, Inc., where he worked as a statistician.  Warnes states that he was an "expert" in

---

[3]In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir.2005); accord Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.1991).

"R" open source statistical software,[4] and that he and the Partners were interested in developing a commercial version of the product.

Warnes alleges that in early 2005 he and the Partners, who were, at that time, "staff" of the Plaintiff, Scientific Computing Associates, Inc. ("SCA"), orally agreed that he and the Partners would enter into a partnership agreement for the purpose of developing and marketing "an enhanced version of the open-source 'R' statistical analysis system" for commercial use by pharmaceutical companies and other businesses.  At the time, however, Warnes's employment contract with Pfizer, Inc. did not allow him to fully participate in this type of business partnership.  Warnes later left Pfizer in 2006 and began working at the University of Rochester Medical Center ("URMC") as an Associate Professor in the Department of Biostatistics and Computational Biology.  Warnes alleges that he took this position, at a substantially lower salary, in order to participate in the alleged business partnership with the Partners.

Warnes alleges that the terms of the partnership agreement were that he would contribute, *inter alia*, his reputation, experience and expertise in "R" open source software as well as his ideas relating to the development and marketing of the potential product.  In return, Warnes alleges that the Partners agreed that

---

[4]"R" is a publicly available (open source) computer software program for statistical computing and graphics. See Compl. at ¶12; see also The R Project for Statistical Computing, www.r-project.org.

he would receive ownership equity in the new company, Revolution Computing, Inc. ("Revolution")[5] and employment at a salary of $180,000 per year, "once venture or other funding was obtained."

Warnes states that the terms of the agreement were repeatedly affirmed by the Partners and that they were included or referenced in various written documents, none of which are described in any further detail or attached to the Counter Complaint.

He further alleges that he contributed ideas that led to the selection of the product names that were trademarked by the Plaintiffs and are now the subject of this litigation ("RPro" and "NetWorkSpaces for RPro"), and that he contributed to the business model of the new company that would be formed, Revolution. Warnes states that he and the Partners agreed that once funding was obtained, the new company would purchase SCA and that, until that time, SCA "would be used as the operational organization."

Following this oral agreement, however, Warnes alleges that he began to realize that the Partners did not intend to formalize the partnership agreement or abide by its terms. He states that the Partners informed him that "it was not possible to create any

---

[5] It is unclear form the Defendant's Counter Complaint when Revolution Computing, Inc. was incorporated and who its incorporators were (SCA or the Partners).  The nature and scope of the Partners' relationship to both companies is also unclear. Defendant alleges that they were part of the "staff" at SCA and that they are now officers or employees of Revolution, and he further alleges that Partners Martin Schultz and Beverly Thalburg Schultz were principals or owners of SCA.  However, Defendant does not allege in the Counter Complaint that the Partners had authority to act on behalf of the companies or, if they did, that they were acting in that capacity with the intention of binding the company, rather than in their individual capacities.

formal agreement before venture funding was obtained," and that "there were insufficient funds to pay Warnes the agreed upon salary." Warnes alleges that Partner Richard Schultz, "acting as an agent for the other [P]artners, refused to formalize the partnership agreement with the full intent of unilaterally changing the partnership terms to benefit himself and the other [P]artners."

Warnes alleges that, in January 2007, he proposed a "Separation Agreement" whereby the Partners and he could each continue to develop their separate business interests and would each retain the rights to certain intellectual property that had been created prior to this time by the respective parties. Warnes states that the Separation Agreement specifically provided that Warnes would retain the rights to develop and produce the commercially supported version of the "R" software called "RPro," and that the Partners would be permitted to "resell" this product. Conversely, the Partners would retain the rights to develop the parallel computing product known as "NetWorkSpaces for RPro" and Warnes would be permitted to resell this product. Warnes alleges that the Partners agreed to these terms.

Warnes then began to pursue the development of "RPro" through a company he formed for this purpose, Random Technologies, LLC, and later attempted to register "R Pro" (with the space) as a trademark. However, on June 26, 2007, the United States Patent and Trademark Office (USPTO) notified Warnes that the trademark "RPro"

was already registered to SCA.  Then, on June 29, 2007, Warnes received a letter from SCA asserting its rights to the trademarks "RPro" and "NetWorkSpaces for RPro" and demanding, *inter alia*, that Warnes cease using the trademarks.  Warnes states that he immediately stopped using the trademarks and attempted to contact SCA in order to meet the other demands of their June 29, 2007 letter.  SCA and Revolution then filed this suit on July 18, 2007.

Warnes alleges that he was damaged by the Partners failure to consummate the partnership agreement and their continued use of intellectual property to which he contributed or that he created.  Specifically, he alleges that he contributed to the business plan for Revolution and to documents used as sales materials and product specifications for "RPro" and "NetWorkSpaces," and that he invented the name "Revolution Computing" and suggested product names that led to the selection of the name "RPro."

With respect to Revolution and SCA, Warnes alleges that Revolution is the "beneficiary of and successor to the partnership agreement between the Partners and Warnes" and that Revolution "is liable for all of the actions performed by members, officers, employees or other agents of both Partners and SCA."

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d

Cir.2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>,550 U.S. 544 (2007)). In considering a Rule 12(b)(6) motion to dismiss, the Court "'must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" <u>See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.</u>, 517 F.3d 104, 115 (2d Cir.2008) (quoting <u>Gorman v. Consol. Edison Corp.</u>, 488 F.3d 586, 591-92 (2d Cir.2007)). However, the court may disregard "legal conclusions, deductions or opinions couched as factual allegations." <u>See</u>, <u>e.g.</u>, <u>In re NYSE Specialists Sec. Litig.</u>, 503 F.3d 89, 95 (2d Cir.2007) (citation omitted). The court is also not required to credit conclusory statements unsupported by factual allegations. <u>See</u>, <u>e.g.</u>, <u>Otor, S.A. v. Credit Lyonnais, S.A.</u>, 2006 WL 2613775, at *2 (S.D.N.Y.2006); <u>see also</u> <u>Davey v. Jones</u>, 2007 WL 1378428, at *2 (S.D.N.Y.2007) (citation omitted) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss."). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>See</u> <u>Twombly</u>, 550 U.S. at 579. The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>See</u> <u>id.</u> at 569.

As the Second Circuit emphasized in <u>Sealed Plaintiff v. Sealed Defendant</u>, "[o]n occasions too numerous to count, we have reminded

district courts that when [a] plaintiff proceeds pro se,...a court is obliged to construe his pleadings liberally....This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings....Accordingly, the dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." <u>See</u> 537 F.3d 185, 191 (2d Cir.2008) (citations and quotation marks omitted); <u>see also</u> <u>Weixel v. Bd. of Educ. of the City of N.Y.</u>, 287 F.3d 138, 146 (2d Cir.2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting <u>Cruz v. Gomez</u>, 202 F.3d 593, 597 (2d Cir.2000) (alterations in original)).

    A.   <u>Breach of Contract and Breach of Fiduciary Duty Claims - Counts I, II, III and XIII</u>

Defendant alleges three causes of action for breach of contract:[6] breach of the partnership agreement, breach of an employment contract and breach of the separation agreement; and a cause of action for breach of a fiduciary duty relating to the alleged partnership agreement. <u>See</u> Answer and Counter Compl. Count

---

[6] Defendant does not allege whether New York or Connecticut state law should apply to his breach of contract claims, and it is unclear whether the performance of the alleged contracts was to be in Connecticut, where Revolution Computing, Inc. is currently located, or in New York, where Defendant resides and was employed by the URMC. However, the elements of a contract, including the requirement that one must be a party to a contract in order to be held liable, are the same in both jurisdictions. <u>See</u> <u>SACS Global Trust Mortg., LLC v. Thomas</u>, 478 F.Supp.2d 285, 288 (D.Conn., 2007); <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 177 (2nd Cir. 2004).

I, II, III and XIII.   However, even reading the allegations in Defendant's Counter Complaint liberally, Defendant has not alleged that the Plaintiffs, SCA and Revolution, were parties to any of these agreements, or that SCA or Revolution owed the Defendant a fiduciary duty.   Taking all Defendants allegations as true, and drawing all reasonable inferences in favor of the Defendant, it appears that he contracted with the <u>Partners</u> in their individual capacities for the purpose of forming a new business, but the contracts were either not consummated or breached prior to the new business having been formed.

It is clear from Defendant's Opposition to the instant Motion to Dismiss, that Defendant seeks to hold SCA and Revolution liable for the actions of the Partners. However, Defendant has not alleged any facts in his Counter Complaint that lend support to his conclusory allegation that Revolution is the "beneficiary of and successor to the partnership agreement between the Partners and Warnes" or that Revolution "is liable for all of the actions performed by members, officers, employees or other agents of both Partners and SCA." Further, Plaintiff alleges only that the <u>Partners</u> owed Defendant a fiduciary duty pursuant to the alleged partnership agreement, and that they breached this duty by failing to protect his interests under the agreement.   Even liberally construing Defendant's factual allegations in the Counter Complaint, this Court finds that Defendant has not plead a

plausible claim for breach of contract or breach of a fiduciary duty against SCA and Revolution.

In his Opposition to Plaintiffs' Motion to Dismiss, Defendant now states that "SCA and Revolution Computing were integral parties to, and are bound by, both the Partnership Agreement and the [Separation] Agreement." He further contends that Revolution should be bound by the pre-incorporation contracts of its promoters, the Partners, through the principle of ratification, and that the Partners were acting as the agents of SCA when contracting with the Plaintiff. He also argues that Revolution was the "successor" to the contracts of SCA, when SCA transferred to Revolution all rights and liabilities associated with the development of the "RPro" and "NetWorkSpaces for RPro" products. However factual allegations to support Defendant's new theories of liability are absent from the Counter Complaint. See Coyle v. Coyle 2005 WL 2812255, *11-*12 (2d Cir. 2005) (holding that the district court properly disregarded the additional facts alleged in a memorandum opposing the dismissal of a *pro se* litigant's complaint, as the district court may generally consider only the facts alleged in the complaint).

Defendant's Counter Complaint does not allege that the Partners were authorized to enter into contracts on behalf of SCA or Revolution or that, even if they were based on their relationships with the companies (which are unclear), that they

entered into such contracts on behalf of the corporation, rather than in their individual capacities. See N.A. Berwin Co. v. Hewitt Realty Co., 199 A.D. 453 (1st Dept. 1922). The only allegation of agency in the Counter Complaint is that one of the Partners, Richard Schultz, acted "as an agent for the other partners."

Defendant has also not alleged that Revolution adopted or ratified any of the alleged contracts between Defendant and the Partners (as it appears that they were either not consummated or breached prior to its existence) to assert a plausible claim for relief based on the pre-incorporation contracts of the promoters. See Reif v. Williams Sportswear, Inc., 9 N.Y.2d 387 (N.Y. 1961); BRJM, LLC v. Output Systems, Inc., 917 A2d 605, 612 (Conn. App. 2007). This Court also notes that Defendant's employment contract, as it is currently plead, is nothing more than an offer of at will employment, terminable at any time by either party, as the term of employment appears to be indefinite. See Somers v. Cooley Chevrolet Co., 146 Conn. 627, 629 (1959); Horm v. New York Times, 100 N.Y.2d 85, 90-91 (2003).

While Defendant has attempted to cure the defects in his Counter Complaint by alleging additional facts and theories of liability in his Opposition to the instant Motion to Dismiss, this Court is constrained to consider the facts as alleged in his Counter Complaint. Accordingly, Defendant's breach of contract

claims (Counts I, II and II), and his breach of fiduciary duty claim (Count XIII) are hereby dismissed.

    B.   <u>Fraud - Counts IV and V</u>

In Counts IV and V, Defendant claims that the <u>Partners</u> fraudulently "refused to formalize the partnership agreement" and that they fraudulently induced the Defendant to enter into the Separation Agreement. <u>See</u> Answer and Counter Compl. at ¶64-79. Specifically, he alleges that Richard Shultz, on behalf of the <u>Partners</u>, misrepresented the Partners' ability to formalize the agreement before venture funding was obtained, and that he, on behalf of the <u>Partners</u>, agreed to the terms of the Separation Agreement in order to induce the Defendant to give up his rights under the partnership agreement.

Initially, this Court notes that Counts IV and V are duplicative of one another. Defendant is essentially alleging one count of fraud, that stemmed from a Partner's alleged misrepresentation regarding the viability of the partnership, which fraudulently induced the Defendant to enter into the separation agreement. However, Plaintiff has not included any allegations of fraud against the Plaintiffs, SCA and Revolution, and, as stated above, he has not alleged that the Partners were acting as agents for either SCA or Revolution when engaging in the allegedly fraudulent activity.

In his Opposition to the instant Motion to Dismiss, Defendant now attempts to allege that the Partners were acting in their capacity as agents of SCA and Revolution when committing the allegedly fraudulent acts, however, such allegations are absent from the Counter Complaint.  Accordingly, as the Counter Complaint does not contain any allegations against the Plaintiffs with respect to Counts IV and V, Counts IV and V are hereby dismissed.

C.    Fraudulent Trademark Registration - Count VI

Defendant also claims that Revolution fraudulently  obtained trademark registration for the trademarks "RPro" and "Revolution Computing."  However, to maintain a cause of action for fraudulent registration of a trademark, a party must plead that the registrant intentionally misled the United States Patent and Trademark Office ("USPTO") with respect to a material fact that would affect the USPTO's decision to register the trademark. See City of New York v. Tavern on the Green, L.P., 427 B.R. 233 (S.D.N.Y. 2010); see also Orient Exp. Trading Co., v. Federated Dept. Stores, Inc., 842 F.2d 650 (2d Cir. 1988).  Defendant now contends that the Plaintiffs misled the USPTO by representing that they were the rightful owners of the mark. However, Defendant's Counter Complaint merely states that the trademarks "RPro" and "Revolution Computing" were obtained fraudulently. See Answer and Counter Compl. at Count VI. Defendant's allegation, as stated, is nothing more than a legal conclusion without the requisite supporting facts.  Further, it

does not appear from the face of the Counter Complaint that
"Revolution Computing" is actually a registered trademark.
Accordingly, as Defendant has not alleged facts in his Counter
Complaint to support his claim that the Plaintiff, Revolution,
intentionally misled the USPTO in their application to obtain the
trademark "RPro," Defendant's claim is hereby dismissed.

    D.   Misappropriate of Trade Secrets - Count VII

    Warnes next alleges that the Partners and Revolution Computing
misappropriated "shared core business ideas, business methods,
intellectual property, and technology that were or are trade
secrets." To state a claim for the misappropriation of a trade
secret, Defendant must plead "(1) that [he] possessed a trade
secret, and (2) that the [opposing party] used that trade secret in
breach of an agreement, confidential relationship or duty, or as a
result of discovery by improper means." See North Atlantic
Instruments, Inc. v. Haber, 188 F.3d 38 (2d Cir. 1999). Defendant
appears to allege that the Partners and Plaintiff, Revolution,
misappropriated the business ideas he shared with them by failing
to abide by the alleged terms of the partnership, employment and
separation agreements. However, as discussed above, Defendant has
not alleged that Revolution was actually a party to any of these
agreements. Defendant has also not alleged that he and Revolution
were in a confidential relationship or that Revolution discovered
the "trade secrets" through improper means. Rather, Defendant's

factual allegations center around his claim that he entered into a partnership agreement with the Partners, and that, pursuant to this agreement, he shared his alleged "trade secrets" with the Partners, and that the Partners misappropriated this information by their "refusal to fulfill their obligations under the contract." As the Partners are not yet parties to this action, and the Defendant's allegations against Revolution are merely conclusory, this Court finds that Defendant has not stated a plausible claim for relief. Accordingly, Count VII is hereby dismissed.

E. <u>Unfair Competition</u>

Defendant asserts a cause of action for unfair competition under the Lantham Act, 15 U.S.C. § 1125, alleging that the Partners and Revolution Computing "repeatedly and falsely asserted, by word and by action, and with full knowledge that these assertions are false, that they (and not Warnes...) are the originators and proper owners of the core business ideas[7]...." <u>See</u> Answer and Counter Compl. at ¶112. Plaintiffs argue that the Defendant has not alleged the required "customer confusion" in order to state a claim for unfair competition. This Court agrees.

---

[7]Defendant also asserts that the Parners and Revolution engaged in unfair competition because they "misappropriated trade secrets, violated copyright, made fraudulent trademark filings, breached multiple contracts, [and] committed multiple frauds." <u>See</u> Answer and Counter Compl. at ¶111. However, this Court has already determined that Defendant has not asserted a plausible cause of action against Revolution with respect to these allegations, and that they are, as stated, legal conclusions without the requisite factual support.. Accordingly, these claims may not form the basis for Defendant's unfair competition claim.

As alleged in the Counter Complaint, the Defendant is not seeking to market and sell a product that is distinct from the Plaintiffs' product. He is seeking to sell the same product, under the same name. He is alleging that he was part of a partnership, whose purpose was to sell the product at issue, and that following the dissolution of the partnership, he sought to continue to sell the product, but was prevented from doing so by the Defendants allegedly unlawful assertion of ownership rights to the product. The issue between the parties, as stated, appears to be who has the right sell (or resell) and profit from the product. See Kitty Walk Systems, Inc. v. Midnight Pass Inc., 431 F.Supp.2d 306, 310 (E.D.N.Y. 2006) ("Here, there is no question but that any goods purchased are precisely what they purport to be-the only question is which party has the right to sell products and the apportionment of any profit. As such, this case is not one of consumer confusion that can be relied upon to support a Lanham Act claim, but a case alleging breach of contract as to authentic goods. Under these circumstances, no claim for trademark or copyright infringement or unfair competition will lie. Accord Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates North America, Inc., 270 F.Supp.2d 432, 436 (S.D.N.Y.2003); Abelman v. Polinex Plastic Prods. Canada, Ltd., 1992 WL 212471 *3 (S.D.N.Y.1992)).

The Court in Kitty Walk relied on Ableman and Christopher Norman for the proposition that the element of customer confusion

was lacking in cases that "involved failed joint venture agreements to market authentic goods." Id.  Based on a fair reading of the Defendant's Counter Complaint, it does not appear that the products he seeks to develop and market are different from the Plaintiffs' products.  From the face of the Counter Complaint, it appears that the Defendant is asserting ownership rights over a product (and a mark) that the parties apparently initially developed together.  By the terms of the alleged separation agreement, according to the Defendant's Counter Complaint, the issue is whether the Defendant has the sole right to develop and sell the RPro product. Accordingly, this Court does not find that the Defendant has sufficiently alleged the element of customer confusion.  Therefore, Defendant's cause of action for unfair competition under the Lantham Act is hereby dismissed.[8]

F.    Tortious Interference - Count X

Warnes alleges that the Partners and Revolution Computing committed the tort of tortious interference with a business relationship because they have "repeatedly and falsely asserted, by word and by action, and with full knowledge that these assertions are false, that they (and not Warnes...) are the originators and proper owners of the core business ideas...." and that the Partners

---

[8]From the face of the Counter Complaint it appears that Defendant also seeks to assert a cause of action for unfair competition under New York and Connecticut state law, however, his Opposition papers indicate that his claim is brought only under the Lantham Act.

and Revolution "disseminated other false and slanderous information to current and potential customers of Warnes."

In order to establish a claim for tortious interference under New York law, plaintiffs must show: (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" See Kirch v. Liberty Media Corp, 449 F.3d 388, 401 (2nd Cir. 2006)(quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, (1996)); Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001); Pelosi v. Schwab Capital Markets, L.P., 462 F.Supp.2d 503, 516 (S.D.N.Y. 2006); see also NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 620-21 (1996)[9]. Defendant has not alleged that he had any actual business relationship (or contract) with a third party, that Revolution Computing knew of the relationship, or that the third party was procured to breach any contract (or walk away from the business relationship) with the Defendant by Revolution's intentional conduct.  Accordingly, Count X is hereby dismissed.

---

[9]The elements of tortious interference with a business relationship are substantially the same under Connecticut law. See Collun v. Chapin 40 Conn. App. 449, 452 (1996).

G.   <u>Deceptive and Unfair Trade Practices - Count XI</u>

Defendant also alleges that the Partners and Revolution violated the Connecticut Unfair Trade Practices Act ("CUTPA")[10] by "repeatedly and falsely assert[ing], by word and by action, and with full knowledge that these assertions are false, that they (and not Warnes...) are the originators and proper owners of the core business ideas...." <u>See</u> Answer and Counter Compl. at ¶119. He further alleges that the Partners and Revolution "disseminated other false and slanderous information" to his customers and "violated copyrights and made fraudulent trademark filings." <u>Id</u>. at ¶120-21.   Plaintiff claims that his ability to develop and market his business has been hindered and that the Plaintiff's actions have reduced his income. <u>Id</u>. at ¶45-48.

CUPTA provides that "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action ... to recover actual damages." Conn. Gen Stat §42-110(g). To state a claim under CUTPA, "a plaintiff must establish both that the defendant has engaged in a prohibited act and that, 'as a result of' this act, the plaintiff suffered an injury." <u>See</u> <u>Abrahams v. Young Rubicam, Inc.</u>, 240 Conn. 300 (1997). A prohibited act is an unfair method of competition or unfair or

---

[10]Warnes initially also alleged a claim for unfair trade practices under New York Law, but he abandons this claim in his Opposition to the instant Motion to Dismiss.

deceptive practice that "(i) offends public policy as it has been established by statutes, the common law, or otherwise; (ii) is immoral, unethical, oppressive, or unscrupulous; or (iii) causes substantial injury to consumers or other businesses." <u>See</u> <u>Omega Eng'g v. Eastman Kodak Co.</u>, 30 F.Supp.2d 226, 260 (D.Conn.1998).

Defendant's allegations that the Plaintiff, Revolution, disseminated false and slanderous information and that Revolution violated copyrights and fraudulently registered trademarks, are conclusory. Defendant has not identified any false or slanderous information that Revolution disseminated to any potential customers of the Defendant and, as discussed above, Defendant's copyright claims are unsupported by the facts, as he has not alleged that he actually registered a copyright. Further, Plaintiff has not alleged any facts that would support his claims that the Plaintiffs misled the USPTO, to support a claim for fraudulent registration of a trademark.

With respect to Defendant's allegation that Revolution has falsely asserted that it is the owner of certain business ideas and intellectual property, Plaintiffs move to dismiss this claim because (1) the claim fails to state how the statute was violated, (2) Defendant has not alleged injury and (3) because Defendant has not alleged that the conduct occurred in a "trade or business" as required under the statute. (Docket #107 at 22). This Court finds

that, at least at the pleading stage, the Defendant has
sufficiently alleged a plausible cause of action under the CUPTA.

Defendant's allegations, taken as true, suggest that Revolution
Computing, unlawfully asserted that they are the originators of
certain business ideas, computer technology and intellectual
property, by claiming that the Defendant did not create (or
contribute to the creation) of such ideas.   Further, Plaintiffs
engaged in certain activities to prevent the Defendant from
capitalizing on his own work with respect to the products.   Even if
the Defendant cannot (after amending his Counter
Complaint)ultimately state a claim for breach of contract or fraud,
which require the support of additional facts (i.e. that the
Plaintiffs' were parties to the agreement and that they
intentionally misrepresented their ability to engage in business
with the Defendant, thereby inducing him into give up his rights to
the business ideas and products), this Court finds that he has, at
a minimum, alleged that the Plaintiff, Revolution,[11] committed acts
which are unethical or offend public policy, and that the Defendant
suffered an ascertainable loss therefrom.   Finally, this Court
finds Plaintiffs' argument that Defendant did not allege that the
conduct occurred in the course of a trade or business unfounded.
Therefore, this Court finds that Defendant has stated a plausible

---

[11]This claim does not appear to be asserted against SCA.

claim for relief under the CUPTA, accordingly Plaintiffs' Motion to Dismiss the Defendant's claim is denied.

    H.   <u>Defendant's Motion to Amend</u>

Defendant seeks leave to amend his counterclaims to sufficiently allege his claims against the Plaintiffs.  Rule 15 of the Federal Rules of Civil Procedures ("Rule 15") provides that a court may grant leave to amend a pleading and such leave "shall be freely given when justice so requires."  Fed. R. Civ. Proc. 15. The Supreme Court has held that "mere technicalities" should not prohibit a court from allowing a party to amend a pleading so that a claim can be decided on its merits. <u>Forman v. Davis</u>, 371 U.S. 178 (1962).  Rather, absent evidence of undue delay, bad faith, undue prejudice, dilatory motive or futility, a party should be granted the opportunity to correct any deficiencies in the complaint. <u>Id.</u> at 182.  Generally, the Court will afford a *pro se* plaintiff an opportunity to amend "'unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.'" <u>Abbas v. Dixon</u>, 480 F.3d 636, 639 2d Cir. 2007) (quoting <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam*).

As there is no evidence of undue delay, bad faith, undue prejudice, dilatory motive or futility, this Court hereby grants Defendant an opportunity to amend his Counter Complaint to properly assert claims against the Plaintiffs, SCA and Revolution.

## CONCLUSION

For the reasons set forth above, this Court grants in part and denies in part Plaintiffs' Motion to Dismiss.  With the exception of Count XI, alleging violations of the CUPTA, Defendant's Counter Complaint is hereby dismissed.  Further, this Court grants Defendant's request for leave to amend his Counter Complaint to properly assert claims against the Plaintiffs.[12]

**ALL OF THE ABOVE IS SO ORDERED.**

s/ Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          April 5, 2011

---

[12]Defendant is strongly encouraged to seek the assistance of counsel in drafting his amended Counter Complaint.  If Defendant is unable to afford an attorney, he may submit an application to this Court, together with documentation of his financial circumstances, at which time this Court will consider whether to appoint an attorney to assist the Defendant in this action.